## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND SEARCH WARRANT APPLICATION

I, James F. Loomis, being duly sworn, depose and state as follows:

### Affiant Background and Purpose of Application

1.    I submit this affidavit in support of:

a.    An application for a criminal complaint charging Tucker E. Jacobs with violating Title 18, United States Code, Section 922(j) on or about April 17, 2024, by knowingly possessing a stolen firearm that had been shipped or transported in interstate or foreign commerce; and

b.    An application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device—further described below and in Attachment A, which is incorporated herein—that is currently in the possession of ATF and the seizure from this device for the electronically stored information described in Attachment B.  The device to be searched is a Motorola Model XT2041-4 cellular telephone, which was seized from the person of Tucker Jacobs by the Newport Police Department on April 17, 2024 (the "DEVICE").  The DEVICE is currently located at the ATF Field Office in Burlington, Vermont.  Based on my training and experience, the DEVICE has been stored in a manner such that the data on the DEVICE are likely to remain intact and in the same condition as at the time of the DEVICE's seizure.  The applied-for search warrant would authorize the forensic examination of the DEVICE for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence offenses of firearm and narcotics possession that Jacobs engaged in while using the DEVICE.

1

2.    I am a Task Force Agent (TFA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and I have been since September 2023.  In my capacity as a TFA, I am familiar with the federal laws relating to the acquisition, possession, and transfer of firearms and the distribution of, possession with the intent to distribute, and conspiracy to distribute controlled substances.  I have been trained in the investigation of violations of those laws, and I have participated in many such investigations.  I am also a Border Patrol Agent (BPA) Intelligence (Intel) [BPA-I] with the United States Border Patrol (USBP), a component of the Department of Homeland Security (DHS), assigned to the USBP Swanton Sector.  I have been employed as a BPA since August 2011.  I am currently assigned as a BPA-I and have been so since May 2019. My current duty station is at the Richford Station in Richford, Vermont.  I received formal training to identify and investigate alien, narcotics, and firearm smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico from August 2011 to January 2012 and through regular and recurring on-the-job training and course certifications.

3.    In my experience investigating smuggling offenses and firearms and narcotic trafficking offenses, I have found that electronic devices such as cellular phones similar to the DEVICE were commonly used to facilitate international smuggling events and domestic trafficking of illicit narcotics and illegal firearm sales and trades.  Smugglers and traffickers often use these devices to coordinate procurement, sales, transport, and distribution of their illegal commodities, as well as the distribution of proceeds related to those offenses.  In my experience, traffickers often use third party applications—such as WhatsApp, Facebook Messenger, Snapchat, Telegram, etc.—such that when data are acquired from recipients of the communications or from the service providers, it may be difficult to attribute those data to a particular sender.  Further, such services often use levels of encryption to protect the nefarious

2

content and context of their communication.  Examination of such electronic devices seized

directly from the suspected smuggler or trafficker can lead to attribution of those

communications to the possessor(s) of the devices.

4.     The information contained within this affidavit is based upon my training and

experience, my own investigative efforts, and investigation by other law enforcement officers

with whom I have spoken or whose reports I have reviewed.  The following is either known to

me personally or has been related to me by persons having direct knowledge of the events

described below.  The information in this affidavit is meant to set forth probable cause to believe

that Tucker Jacobs committed certain offenses and that evidence of them will be found on the

DEVICE; it does not necessarily include every fact known to law enforcement about the events

described below.  Unless otherwise specified, the statements described in the following

paragraphs are related in sum and substance and are not meant to be direct quotations or

complete descriptions.

**Probable Cause**

5.     Wright's Sports Supply LLC—doing business as Wright's Sports Shop at 48

Community Drive in Newport, Vermont—is a current Federal Firearms Licensee (FFL).  As an

FFL, Wright's Sports Shop may lawfully engage in the business of dealing in firearms, provided

it maintains appropriate records and abides by legal restrictions on the transfer of firearms.  One

record FFLs must maintain is an accurate log (including, among other data, the make, model, and

serial number) of each firearm currently in its sale inventory.

6.     On April 15, 2024, at approximately 11:44 p.m. the Vermont State Police Dispatch

received a motion alarm notification at Wright's Sports Shop.  Law enforcement officials from

the Newport Police Department (NPD), Orleans County Sheriff's Department (OCSD), and

3

Vermont State Police (VSP) responded and arrived at approximately 11:50 p.m. They immediately noticed the glass had been broken out of the front door of the building. Law enforcement officials entered the building and noticed a glass gun case containing handguns had been shattered. Several firearms appeared to be missing from the case.

7.     The owner of Wright's Sports Shop was contacted, and he arrived at the store at approximately 12:13 a.m. on April 16, 2024. The owner gave law enforcement access to a security video system that monitors the store. Trooper Richard Berlandy and other law enforcement viewed video recordings of the incident. The video showed one subject wearing boots, a large-hooded jacket, and a mask while carrying a large shopping bag and large pry bar walk to the front door of Wright's Sports Shop at approximately 11:42 p.m. The subject sat down and turned on the flashlight function on a cellular phone. The subject then attempted to pry the front door open with the pry bar. The subject was unsuccessful and instead used the pry bar to shatter the glass of the door and gain entry to the building. Once in the building, the subject used the pry bar to smash a glass case containing handguns. The subject placed several of the handguns into the shopping bag and then fled through the broken glass door at approximately 11:45 p.m. Law enforcement officials attempted to locate the subject in the immediate area, but they were unsuccessful.

8.     An inventory conducted by the store owner, VSP, and ATF personnel revealed that ten handguns were missing from the glass case. Identification data for each of the stolen firearms were entered into the National Crime Information Center (NCIC). One of the handguns discovered to be missing and entered into NCIC was a Heckler & Koch VP9, 9-millimeter semi-automatic pistol bearing serial number 224-408915.

4

9.     At approximately 10:00 a.m. on April 16, 2024, ATF Special Agent (SA) Tam Vieth and I met with VSP Trooper David Robillard. Trooper Robillard gave us a copy of the video footage of the burglary at Wright's Sports Shop, and I have since viewed the footage.

10.     On April 17, 2024, at approximately 5:18 p.m., NPD received a report of a suspicious vehicle parked in a driveway in Newport. The caller stated the vehicle did not have permission to be there. Law enforcement from OCSD, VSP, and NPD—including NPD Officer Jonathan Morin—responded to the scene and encountered a red Toyota RAV4 bearing Vermont license plate HTW 521. While Officer Morin was approaching the vehicle, the front seat passenger exited the vehicle and entered a nearby apartment near 117 Third Street in Newport, Vermont, which Officer Morin knew to be occupied by Hailey Tullis. Officer Morin interviewed the driver of the Toyota, whom he knew from previous law enforcement contacts to be Erika Lewis. Lewis told Officer Morin that the person who had exited the vehicle was Tucker Jacobs.

11.     Officer Morin and other law enforcement on scene were aware that Jacobs was currently under conditions of release imposed by Orleans County District Court on March 29, 2024. Officer Morin was aware that one of Jacobs's conditions of release is a 24-hour curfew that prohibits Jacobs from leaving the residence located on Goodall Road in Holland, Vermont except for the hours of 12:00 pm to 2:00 pm to run errands. Another condition imposed prohibits Jacobs from buying, possessing, or using firearms or dangerous/deadly weapons.

12.     Knowing that Jacobs was currently in violation of his conditions of release by being outside of the Goodall Road residence, Officer Morin went to the door that he saw Jacobs enter and announced to him that he needed to come out and that he was under arrest. Two people came to the door and advised Officer Morin that Jacobs had already left. Officer Keithan and other law enforcement officials were able to locate Jacobs in the vicinity, and Jacobs attempted

to flee, which resulted in a brief foot pursuit. When officers reached him, Jacobs briefly resisted arrest and refused to put his hands behind his back. Jacobs was eventually placed in handcuffs and searched. Located on Jacob's person was a cellphone (the DEVICE), a military identification card, drug paraphernalia (including two crack pipes), and a Heckler & Koch VP9 pistol bearing serial number 224-408915.

13. Officer Morin had the Heckler & Koch VP9's serial number run through NCIC, and the resulting report listed it as having been stolen from Wright's Sport Shop on April 16, 2024. Jacobs was transported with the evidence to the Newport Police Department for further processing and investigation.

14. At approximately 7:30 p.m., NPD Officer Nicholas Rivers informed SA Vieth and I of the recovery of the stolen firearm. I advised Officer Rivers that I would respond to assist in the investigation and attempt to interview Jacobs. At approximately 10:30 pm, NPD Detective Aaron Lefebvre and I interviewed Jacobs at the Newport Police Department. I advised Jacobs of his *Miranda* rights using an ATF Advice of Rights and Waiver Form. Jacobs stated that he understood his rights to have attorney present during questioning and agreed waive his rights and answer questions. A synopsis of the relevant content of the audio-recorded interview follows.

  a.  Jacobs stated that he knew that he was under curfew and that is why he ran from law enforcement.

  b.  Jacobs admitted to possessing approximately a ball of crack—which I know to refer to approximately 3.5 grams of cocaine base, based on my training and experience—that he was hoping to distribute some of to make some money.

  c.  Jacobs stated that while he was in the apartment of Hailey Tullis in Newport, he saw an unattended backpack that he knew contained five firearms. Jacobs claimed to

6

have previously seen the firearms to know they still had store tags on them. Jacobs stated that he was not sure where the firearms had been stolen from, but he presumed they had been stolen. Jacobs was aware of the recent break in at Wright's Sports Shop.

     d.    Jacobs stated that while everyone in the apartment was distracted, he was able to go into the backpack and take the Heckler & Koch pistol. Jacobs said he had previously seen the firearm and purposefully picked that one out of the bag.

     e.    Jacobs stated that he had a photograph of seven or eight of the firearms saved on his cell phone. Detective Lefebvre retrieved the cell phone that was discovered on Jacobs's person during the arrest (the DEVICE). I asked Jacobs for consent to search the DEVICE, and he signed a written consent form and provided the passcode pattern for the DEVICE. Jacobs showed Detective Lefebvre and me a deleted photograph of seven pistols in a wooden crate. When I restored the photograph to the DEVICE's photo gallery, the photograph had a time stamp of 12:37 am on April 16, 2024, less than an hour from when the Wright's Sports Shop break-in occurred. The photograph originated in the Snapchat messaging application. I placed the DEVICE into airplane mode to preserve its contents as evidence. Jacobs confirmed that one of the firearms in the photo was the Heckler & Koch VP9 he was arrested with.

     f.    At the conclusion of the interview, I took possession of the DEVICE and later transported it to the ATF Field Office in Burlington, Vermont, where it is currently located. Later that day, I was informed that an individual at a law firm purporting to represent Jacobs in this matter contacted VSP and indicated Jacobs revoked his consent for a search of the DEVICE.

15.  On April 18, 2024, I spoke with ATF Special Agent Eric Brimo, an expert in the interstate nexus of firearms.  He informed me that the Heckler & Koch VP9 pistol was not made in Vermont and that its presence in Vermont indicated it had been shipped or transferred in interstate and/or foreign commerce.

### Conclusion and Requests

16.  Based on the foregoing, I submit there is probable cause to believe that on or about April 17, 2024, in the District of Vermont, Tucker E. Jacobs violated 18 U.S.C. § 922(j) by knowingly possessing a stolen firearm which had been shipped or transported in interstate or foreign commerce.  I respectfully request the Court issue a Criminal Complaint charging him accordingly and a warrant for his arrest.

17.  Also based on the foregoing, I submit there is probable cause to believe that evidence of the possession of the stolen firearm and of the possession of controlled substances in violation of 21 U.S.C. § 844 will be located on the DEVICE.  I respectfully request the issuance of a search warrant authorizing the examination of the DEVICE, further described in Attachment A, and the seizure therefrom of the data described in Attachment B.  Because the search warrant seeks only permission to examine the DEVICE, which is already in the possession of a law enforcement entity, the execution of this warrant does not involve the physical intrusion onto premises.  Accordingly, I submit there is reasonable cause for the Court to authorize execution of the search warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 22nd day of April 2024.

James F. Loomis
Task Force Agent, ATF

Sworn and subscribed before me this 22nd day of April, 2024.

Honorable Kevin J. Doyle
United States Magistrate Judge
District of Vermont

9